**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BUILDING SERVICE EMPLOYEES IN-TERNATIONAL UNION, LOCAL NO. 105, Respondent.**

**No. 8399.**

United States Court of Appeals
Tenth Circuit.

Oct. 11, 1966.

228

Elliott C. Lichtman, Washington, D. C.
(Arnold Ordman, Gen. Counsel, Domi-
nick L. Manoli, Associate Gen. Counsel,

Marcel Mallet-Prevost, Asst. Gen. Coun-
sel, and Glen M. Bendixsen, Washington,
D. C., Atty., on the brief), for petitioner.

Philip Hornbein, Jr., Denver, Colo.
(Roy O. Goldin, Denver, Colo., with him
on the brief), for respondent.

Before LEWIS, BREITENSTEIN and
HICKEY, Circuit Judges.

LEWIS, Circuit Judge.

The National Labor Relations Board
seeks enforcement of its order that the
respondent Union, among other things,
shall cease and desist from "threatening,
coercing, or restraining Denver U. S. Na-
tional Bank, or any other person engaged
in commerce or in any industry affect-
ing commerce, where an object thereof is
to force or require Denver U. S. National
Bank, or any other person, to cease doing
business with Industrial Janitorial Serv-
ice, Inc." The order followed determina-
tion by the Board that the Union had
engaged in an unfair labor practice in
violation of section 8(b) (4) (ii) (B) of
the National Labor Relations Act,[1] by
participation in peaceful secondary
picketing of the Denver U. S. National
Bank while engaged in a primary labor
dispute with Industrial Janitorial Serv-
ice, Inc. The Union resists enforcement
and contends that its activities were not
prohibited under the Act and that, addi-
tionally, the order of the Board is too
broad. The evidentiary facts are not in
dispute.

The Denver U. S. National Bank is en-
gaged in the general banking business
and occupies a four story building in
downtown Denver. Beginning October
31, 1963 Janitorial Service began per-
formance of a contract with the Bank to
provide cleaning services at the Bank
building. These services were performed
by fifteen to seventeen employees of
Janitorial Service working from 6:15

1. As amended by the Labor-Management
Reporting and Disclosure Act of 1959
(Landrum-Griffin Act) § 704(a), 73 Stat.
542, 29 U.S.C. § 158(b) (4) (ii) (B),
and which reads in pertinent part as fol-
lows:
    "It shall be an unfair labor practice
for a labor organization or its agents

* * * to threaten, coerce, or re-
strain any person engaged in commerce
or in an industry affecting commerce,
where in either case an object thereof
is * * * forcing or requiring any
person * * * to cease doing business
with any other person * * *."

p. m. to 10:00 p. m. on Monday through Thursday and from 1:00 p. m. until 5:00 p. m. on Sundays. With few exceptions, the Bank's employees began work between 7:00 and 8:00 a. m. and quit between 4:00 and 6:00 p. m.

Beginning on February 26, 1964, and continuing until March 12, 1964, the Union distributed handbills at the Bank's premises between the hours of 10:00 a. m. and 3:00 p. m. The handbills were headlined as a "notice to the public" and protested that the janitorial work in "this bank building" was being performed by Janitorial Service who refused to pay its employees "a living wage." The handbills also stated that the respondent Union had no dispute with any person, firm or corporation other than Industrial Janitorial Service, Inc. On March 2, 1964, the pedestrian and motor entrances to the Bank were picketed by persons carrying signs with the legend:

> Industrial Janitorial Service, Inc. refuses to pay its employees a living wage.

This picketing continued until March 12. At no time were the offices of Janitorial Service picketed nor did the respondent Union approach its management or employees.

Although the respondent Union emphatically states that the Board order is in complete disregard of the decision of the Supreme Court in NLRB v. Fruit and Vegetable Packers and Warehousemen, Local 760, 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 (*Tree Fruits*), we find the contention to lack merit. In *Tree Fruits*, the Supreme Court concluded that the 1959 amendments to the National Labor Relations Act were intended by Congress to proscribe peaceful union activity only where experience had shown the activity to be one of those "isolated evils" not otherwise protected by the First Amendment. Broadly stated, the evil to which the 8(b) (4) amendments are directed is secondary union activity which does not encompass some direct action against the primary antagonist, whether that an-

tagonist be an employer or a rival union. Local 761, International Union of Electrical, Radio and Mach. Workers v. NLRB, 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592; National Maritime Union of America v. NLRB, 2 Cir., 342 F.2d 538; Seafarers International Union, etc. v. NLRB, 105 U.S.App.D.C. 211, 265 F.2d 585. Thus, as in *Tree Fruits*, where peaceful picketing on the premises of a neutral employer can be identified, at least partially, as direct action against the primary party with whom the union has a dispute, it is not proscribed by section 8(b) (4) of the Act. In the case at bar, however, the union activity was directed in time and space so as to avoid the premises of Janitorial Service and to avoid the time when its employees were rendering services upon the premises of the Bank. In contrast with *Tree Fruits*, the picketing did not follow a product (or service) so as to continue as a primary dispute, but was specifically divorced from the primary employees' activities and thrust directly at the Bank's physical properties, its employees and customers, and during banking hours only. While in proper consumer picketing the customers of the secondary employer may recognize and honor the protest of the picketer, he may also continue to do business with the secondary employer. The dispute, although extended, remains with the primary employer. Here it does not. The primary employer cannot be reached except through the Bank when the picketing activities are so directed. Generally, the very existence of a picket line is an appeal to the public and to other employees not to enter the picketed premises, notwithstanding printed declarations that the primary dispute is with another party who is not present. Superior Derrick Corp. v. NLRB, 5 Cir., 273 F.2d 891, 895, cert. denied 364 U.S. 816, 81 S.Ct. 47, 5 L.Ed.2d 47, and authorities cited therein. Any softening effects that respondent's limiting declarations set out in the picketing legend might have had on the Bank's patrons and tradesmen were surely minimized by the fact that the

picketing occurred *only* at the Bank premises and *only* during regular banking hours when both the primary employer and his employees were scheduled to be absent. Also, respondent's failure to make an effort to seek out the primary employer or his employees in the first instance belies any assertion that the Bank was not at least one of the immediate targets of the picketing. As the synopsis of legislative history in the *Tree Fruits* opinion demonstrates, 377 U.S. at 62–71, 84 S.Ct. 1063, the conduct of a labor organization such as is involved here is precisely the type of "isolated evil" to which section 8(b) (4) (ii) (B) is directed.

■ Nor can respondent avoid the legal implications and consequences of its coercive acts simply by calling attention to its failure to achieve observable coercive results. Lack of evidence of specific unlawful intent by the Union is not fatal to the Board's decision where the Union's conduct carries its own indicia of intent sufficient to place it within the Board's prerogative of balancing the legitimate interests of labor and management in furtherance of the general purpose of the Act. NLRB v. Erie Resistor Corp., 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308. And compare NLRB v. Brown, 10 Cir., 319 F.2d 7, aff'd 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839. The Board could well conclude that the Union's picketing was not in fact informational in nature nor directed, or intended to be directed, to the general public.

■ Finally, respondent complains that the Board's order is unduly broad in scope in that it prohibits future unlawful conduct not only against the Denver U. S. National Bank but also against "any other person engaged in commerce or in any industry affecting commerce." In the exercise of its wide discretion, the Board is free to formulate an order which prohibits similar unlawful conduct if in

its judgment the gravity of the specific violation demonstrates contemptuous disregard [2] for a mandate of the National Labor Relations Act. NLRB v. International Union of Operating Engineers, Local 571, 8 Cir., 317 F.2d 638, 643–644, and authorities cited therein. In view of the record as a whole and of the fact that an order confined solely to action against the Bank could expose other parties with whom Janitorial Service does business to similar secondary pressures, International Brotherhood of Electrical Workers, etc. v. NLRB, 341 U.S. 694, 705–706, 71 S.Ct. 954, 95 L.Ed. 1299, we find no abuse of the Board's discretion.

The order will be enforced.

---

2. The Union contended unsuccessfully before the Trial Examiner that there was no proof of Union responsibility for the picketing, a contention that might strain any presumption of a desire to cooperate in obtaining labor harmony.