**GEORGIA–PACIFIC CORPORATION, a Georgia Corporation, Plaintiff,**

v.

**COLUMBIA RIVER CHAPTER OF PACIFIC LOG SCALERS ASSOCIATION, an unincorporated association and labor organization, Defendant.**

Civ. No. 71–203.

United States District Court,
D. Oregon.

June 15, 1972.

Clifford N. Carlsen, Jr., Miller, Anderson, Nash, Yerke & Wiener, Portland, Or., for plaintiff.

Paul T. Bailey, Gerald C. Doblie, Portland, Or., for defendant.

## OPINION

SOLOMON, Judge:

Georgia-Pacific filed this action against the Columbia River Chapter of Pacific Log Scalers Association (the Union) for $12,729.38 in damages. Georgia-Pacific asserts that production was stopped when the Union engaged in unlawful secondary activity at Georgia-Pacific's Coos Bay Division on March 24th and 25th, 1971, in violation of 29 U.S.C. § 158(b)(4)(i, ii)(B); also 29 U.S.C. § 187(b).

The Union represents log scalers employed by the Columbia River Log Scaling and Grading Bureau (Bureau). The Bureau furnishes log scaling and grading services to timber companies, in Oregon, most of which subscribe to Bureau services. Georgia-Pacific subscribed until February, 1971, at which time it notified the Bureau that it would no longer use Bureau scalers for its Coos Bay Division. Georgia-Pacific hired an ex-Bureau scaler to do the work for it.

Union officers knew that Georgia-Pacific planned to terminate its relationship with the Bureau, but the Union did not receive a formal notice to that effect, and Georgia-Pacific continued to use Bureau scalers until March 24th.

The Union struck the Bureau on March 24th, when its negotiations for a new labor agreement reached an impasse. The Union placed pickets at Bureau work sites throughout the state.

Because Georgia-Pacific was short of logs at its Coos Bay Division, it bought logs from Weyerhaeuser Company. Georgia-Pacific required the logs to be graded and scaled by Bureau personnel. Two Bureau scalers partially scaled the logs on March 22nd, and Georgia-Pacific's Coos Bay manager requested the Bureau to send a man to complete the work on March 24th.

The Bureau Manager reported to the Coos Bay Division at about 6:00 A.M. on the 24th, and the first pickets appeared about 30 minutes later. The pickets carried signs showing that the Union's dispute was with the Bureau and with no other employer.

Both the Bureau scalers and most of Georgia-Pacific's employees had always used the main gate when working at the Coos Bay Division. On both March 24th and 25th, almost all Georgia-Pacific employees at the Coos Bay Division honored the picket line, and production practically stopped.

On March 25th, Georgia-Pacific notified the Union that Georgia-Pacific had established a reserve gate for log scalers away from the main gate. The Union moved its pickets to the reserve gate for the duration of the strike.

Georgia-Pacific contends that the picketing at the main gate on March 24th and 25th constituted unlawful secondary activity. The Union denies it was secondary activity and asserts that it was primary activity at the situs of the Bureau's normal business, and hence protected under the Board's ruling laid down in Sailor's Union of the Pacific [Moore Dry Dock], 92 NLRB No. 547, 27 L.R.R.M. 1108 (1950). There the Board held that the situs of a labor dispute may be other than the premises of the primary employer. If the situs of the dispute is the premises of a secondary employer, picketing of the secondary employer's premises is lawful if:

"(a) The picketing is strictly limited to times when the *situs* of dispute is located on the secondary employer's premises; (b) at the time of the picketing the primary employer is engaged in its normal business at the *si-*

*tus*; (c) the picketing is limited to places reasonably close to the location of the *situs*; and (d) the picketing discloses clearly that the dispute is with the primary employer." 92 NLRB at 549.

■ Here, the Bureau scaled for Georgia-Pacific on Georgia-Pacific's property until the day of the strike. This work was not completed, and a Bureau employee, at Georgia-Pacific's request, reported to its Coos Bay Division to complete the work. I find that the situs of the dispute was Georgia-Pacific's premises and that the main gate of the Coos Bay plant was an appropriate place at which to picket.

There was no scheduled time for the Bureau to do the work. The Bureau could have commenced scaling the logs at any time after the strike began. I therefore find it was lawful for the Union to picket the premises on the 24th and 25th, even during periods when no Bureau personnel were physically present on Georgia-Pacific's property. Teamsters Local 294 (Montgomery Ward & Co.), 194 NLRB No. 185, 79 L.R.R.M. 1251 (1972).

Neither NLRB v. Building Service Employees, 367 F.2d 227 (10th Cir. 1966), nor Broadcast Employees Local 25 (Taft Broadcasting Co.), 194 NLRB No. 11, 78 L.R.R.M. 1647 (1971), are in point. There, the picketing of a secondary employer's premises was held to be unlawful because the union picketed at times when it knew no struck work was scheduled.

■ I find that the wording of the signs and the situs of the picketing were proper and that Georgia-Pacific failed to prove that the Union's real purpose was to embroil Georgia-Pacific's neutral employees in the Union's dispute with the Bureau. Carpenters Local No. 944, 159 NLRB No. 41, 62 L.R.R.M. 1335 (1966).

■ The Union began the picketing at 6:00 A.M. on the 25th. This was 30 minutes earlier than it commenced to picket on the 24th. Georgia-Pacific asserts that this change in time shows that this was not an informational picket line but it was an attempt to improperly stop Georgia-Pacific's employees from working. The Bureau employee commenced work at 6:00 A.M. on the 24th. The Union had a right to assume that he might attempt to enter the plant at 6:00 A.M. on the 25th. This assumption and its action do not show an unlawful secondary intent.

In my view, the picketing on both March 24th and 25th, 1971, was lawful primary picketing.

This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

Defendant is entitled to a judgment in its favor.