511 F.2d 1226
 88 L.R.R.M. (BNA) 2929, 76 Lab.Cas. P 10,655
 GEORGIA-PACIFIC CORPORATION, an Oregon Corporation,
Plaintiff-Appellant,
v.
COLUMBIA RIVER CHAPTER OF PACIFIC LOG SCALERS ASSOCIATION,
an unincorporated association and labor
organization, Defendant-Respondent.
 No. 72--2529.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 3, 1975.
 
 David W. Morthland (argued), Portland, Or., for plaintiff-appellant.
 Paul T. Bailey (argued), of Bailey & Doblie, Portland, Or., for defendant-respondent.
 Before VAN OOSTERHOUT,* BARNES and ELY, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 This is an appeal from a judgment entered June 15, 1972, in the District Court of Oregon, Honorable Gus J. Solomon, Judge, wherein Judge Solomon found there was no unlawful secondary picketing by the defendant Union in violation of 29 U.S.C. § 158(b)(4)(i)(B) and (ii)(B) and 29 U.S.C. § 187, but only 'lawful primary picketing' on the two days involved, March 24th and 25th, 1971.
 
 
 2
 While this was the sole issue involved, there were three subsidiary issues:
 
 
 3
 1. Were the picketing operations on a 'common situs' of the labor dispute? The trial judge found they were.
 
 
 4
 2. If so, did the Union comply with the legal requirements in picketing there? The trial judge found that the Union did.
 
 
 5
 3. If both the above were so, was there still an alleged unlawful secondary objective in the Union so picketing? The trial judge held this was 'not proven.'
 
 
 6
 It should first be noted that appellant, Georgia-Pacific Corporation, had no dispute with the Union defendant, but the Union has, and had, a dispute with the Columbia River Log Scaling & Grading Bureau, a corporation (herein 'Bureau').
 
 
 7
 It is true there was confusing, if not conflicting testimony, before the trial court concerning whether or not the Union had an unlawful secondary objective in its picketing of Georgia-Pacific. (See Tr., pp. 65--82 (Walton) and pp. 83 to 99 (Yoemans).)
 
 
 8
 The questioning of Walton continued until the court requested that Walton's original deposition, a summary of which had been introduced in evidence, be itself introduced so that he might study it, and compare it with Walton's testimony in court. The court, admittedly was confused by the distinctions drawn by Mr. Walton.
 
 
 9
 'The Court: You were trying to prevent your own members from working then, weren't you?
 
 
 10
 Mr. Walton: We were trying to prevent anyone from working who would be doing our work.' (Tr., p. 70, lines 9--12).
 
 
 11
 The deposition of Yeomans was likewise introduced.
 
 
 12
 The court finally decided that an illegal secondary objective on the part of the Union 'was not proven.'
 
 
 13
 This panel has read the record; and re-read the testimony of witnesses Walton and Yeomans. While all the judges on the panel would not necessarily arrive at the same conclusions as did the trial judge, we cannot say that there does not exist sufficient substantial evidence in the record to support each of the trial court's findings.
 
 
 14
 Based upon such findings, the trial court's conclusion that all elements for lawful picketing required by Sailor's Union of the Pacific AFL (Moore Dry Dock Co.), 92 NLRB No. 93 27 LRRM 1108 (1950) were established; that the Union's required effort 'to minimize the effect of picketing' was found to have existed, and that an alleged unlawful secondary objective in the Union was 'not proven,' (see Georgia-Pacific Corporation v. Columbia River Chapter of Pacific Log Scalers Association, a labor organization, 386 F.Supp. 1199 (1975)) we therefore
 
 
 15
 Affirm.
 
 
 
 *
 Honorable Martin D. Van Oosterhout, Senior Circuit Judge, Eighth Circuit, sitting by designation